IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | |
|---|---|
| SANDRA J. CRUSCH and MICHAEL SCHMITZ, | Civil Action No. |
| Plaintiffs, | PLAINTIFFS' COMPLAINT FOR THE ENFORCEMENT OF RIGHT TO HEALTHCARE BENEFITS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 ("ERISA") |
| v. | |
| BLUE CROSS BLUE SHIELD OF NORTH DAKOTA, a North Dakota Insurance Company, MCKENZIE COUNTY GROUP BENEFIT PLAN, an employee welfare benefits plan, and EDUCATORS PLUS 250, an employee welfare benefit plan, | |
| Defendants. | |

_____/

## PLAINTIFFS' COMPLAINT

PLAINTIFFS SANDRA J. CRUSCH and MICHAEL SCHMITZ, by their attorneys, JOHN J. CONWAY, P.C., and for their Complaint against DEFENDANTS BLUE CROSS BLUE SHIELD OF NORTH DAKOTA, MCKENZIE COUNTY GROUP BENEFIT PLAN, and EDUCATORS PLUS 250, states as follows:

### NATURE OF THE ACTION AND JURISDICTION

1.     This civil action is brought under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") for the purpose of compelling the Defendants to provide certain healthcare benefits to Plaintiffs, who are ERISA plan participants and/or beneficiaries, in the proper amounts and at the required coverage levels, for injunctive relief, recovery of damages, costs, and attorney fees incurred as a consequence of the Defendants' failure to do so.

2.     Plaintiff SANDRA J. CRUSCH ("Plaintiff" or "Ms. Crusch") is a resident of Watford City, located in McKenzie County, North Dakota and resides within this District. At all relevant times, Plaintiff's health insurance contract purported to provide her with medical coverage for emergency transportation services, including air ambulance services.

3.     Ms. Crusch was, at all relevant times, a "participant" as that term is defined by ERISA and she enjoyed membership within an employee welfare benefit plan known as the "Educators Plus 250" which is insured and administered by the Defendant BLUE CROSS BLUE SHIELD OF NORTH DAKOTA.

4.     Plaintiff MICHAEL SCHMITZ ("Plaintiff" or "Mr. Schmitz") is a resident of Watford City, located in McKenzie County, North Dakota and resides within this District. At all relevant times, Plaintiff's health insurance contract purported to provide him with medical coverage for emergency transportation services, including air ambulance services.

5.     Mr. Schmitz was, at all relevant times, a "participant" as that term is defined by ERISA and he enjoyed membership within an employee welfare benefit plan known as the "McKenzie County Group Benefit Plan" which is insured and administered by the Defendant Blue Cross Blue Shield of North Dakota.

6.     Defendant BLUE CROSS BLUE SHIELD OF NORTH DAKOTA ("Defendant" or "BCBSND") acts as the "claims administrator" and insurer of the Plaintiff's medical coverage at issue in this case. Defendant BCSCND is a North Dakota insurance corporation that is, and was, at all relevant times, doing business within this District.

7.     Defendant Educators Plus 250 is an "employee welfare benefit plan," as defined and governed by ERISA, and is a necessary party to this action in order to secure full and complete

2

relief.

8.       Defendant McKenzie County Group Benefit Plan is an "employee welfare benefit plan," as defined and governed by ERISA, and is a necessary party to this action in order to secure full and complete relief.

9.       All or a part of the wrongful conduct and/or transactions described herein occurred within the State of North Dakota, and more specifically, within this District, where Defendant BCBSND is regularly engaged in commerce and conduct business with a number of employee welfare benefit plans.

10.      Jurisdiction is proper in this Court under 29 U.S.C. § 1132(e)(1) and (f) and 28 U.S.C. § 1331, 28 U.S.C. § 2201(a), and the Patient Protections from the Public Health Services Act ("PHSA,") as adopted by the Patient Protection and Affordable Care Act, commonly referred to as the Affordable Care Act ("ACA,") and codified at 42 U.S. Code § 300gg-19a.

11.      Venue is proper in this District under 29 U.S.C. § 1132(e)(2).

12.      All documents referenced herein are in the possession of Defendants.

13.      Plaintiffs have exhausted all administrative remedies available to them, or by operation of law, their claims have been "deemed denied" making their claims ripe for judicial review and adjudication, and/or, alternatively, exhaustion is futile.

## GENERAL ALLEGATIONS

14.      Plaintiffs re-allege all preceding paragraphs.

15.      Plaintiff Sandra J. Crusch is, and was, at all relevant times, a "participant" or "beneficiary," within the meaning of the Employment Income Security Act of 1974 ("ERISA").

16.      Ms. Crusch purchased and/or was provided healthcare insurance coverage through

3

her employer under a contract of insurance that is insured and administered by Defendant BCBSND.

17.     Plaintiff Michael Schmitz is, and was, at all relevant times, a "participant" or "beneficiary," within the meaning of the Employment Income Security Act of 1974 ("ERISA").

18.     Mr. Schmitz purchased and/or was provided healthcare insurance coverage through his employer under a contract of insurance that is insured and administered by Defendant BCBSND.

19.     One of the essential healthcare benefits provided under the terms of the Defendant BCBSND's healthcare insurance contracts was coverage for emergency medical services, including medical transport and/or emergency medical transportation services, for Plaintiffs and/or their eligible "beneficiaries."

20.     Under the terms of the subject insurance contract, Defendant BCBSND agreed to reimburse Plaintiffs for emergency air ambulance services when those services were medically appropriate and necessary at a maximum amount set exclusively by it, but which must be objectively reasonable under ERISA, its regulations, and other governing law.

21.     Plaintiffs were insured under a BCBSND group health plan at the time that their minor dependent beneficiary required emergency medical transportation services.

22.     Ms. Crusch's health insurance coverage was provided through her employment with McKenzie County Public Schools District.

23.     Mr. Schmitz's health insurance coverage was provided through his employment with McKenzie County.

24.     On or about March 25, 2015, after a sudden fall while at school, Plaintiffs' daughter

4

was admitted to McKenzie County Health Systems in Watford City, North Dakota, with neurologic symptoms including dizziness, left-side weakness and partial paralysis.

25.     Plaintiffs' daughter was placed under the primary care of Dr. Gary Ramage, her attending emergency medical provider.

26.     A CT scan of Plaintiffs' daughter's brain revealed a cerebral parenchymal lesion with hemorrhage, possibly indicative of hemorrhagic neoplasm.

27.     In the opinion of Plaintiffs' daughter's attending emergency medical care provider, definitive pediatric neurosurgical consultation was necessary and McKenzie County Health Systems did not contain the pediatric neurosurgery services or brain imaging services necessary to definitively and sufficiently diagnose her emergency condition, nor the appropriate level of care to treat her condition.

28.     Local medical facilities in and around Watford City, North Dakota were unable to adequately treat Plaintiffs' daughter's serious condition and ill-equipped to address her critical medical needs.

29.     Plaintiffs' daughter's attending physician determined that she should be medically transported from Watford City, North Dakota by advanced life support air ambulance to the Mayo Clinic, in Rochester, Minnesota, which was better equipped to address her medical condition.

30.     Based on the distance between the hospitals and Plaintiffs' daughter's emergency medical conditions, medical transport aircraft from Valley Med Flight, Inc. was summoned and responded to the request to medivac her to the Mayo Clinic, in Rochester, Minnesota by fixed wing aircraft.

31.     Plaintiffs' daughter was safely transported to and treated at the Mayo Clinic.

5

32.     While Plaintiffs' daughter was discharged from the Mayo Clinic, Plaintiffs were instructed to report immediately to a hospital if their daughter began to display any headache, nausea, dizziness, or neuro-deficits.

33.     On or about April 4, 2015, Plaintiffs' daughter was again admitted to McKenzie County Health Systems in Watford City, North Dakota, after she suffered an episode of shaking on her right side followed by her left side the night prior, on and off for approximately 90 minutes, accompanied by an inability to answer questions or open her eyes, and she woke up that morning complaining of nausea, dizziness, and headache located in the front of her head.

34.     Plaintiffs' daughter was placed under the primary care of Dr. Kylene Nicole Haskins, her attending emergency medical provider.

35.     In the opinion of Plaintiffs' daughter's attending emergency medical care provider, she was again exhibiting symptoms consistent with a cerebral parenchymal lesion with hemorrhage and definitive pediatric neurosurgical consultation was necessary, as McKenzie County Health Systems did not contain the pediatric neurosurgery services or brain imaging services necessary to definitively and sufficiently diagnose her emergency condition, nor the appropriate level of care to treat her condition.

36.     Once again, based on the distance between the hospitals and Plaintiffs' daughter's emergency medical conditions, medical transport aircraft from Valley Med Flight, Inc. was summoned and responded to the request to medivac her to the Mayo Clinic, in Rochester, Minnesota by fixed wing aircraft.

37.     Plaintiffs' daughter was safely transported to and treated at the Mayo Clinic.

38.     Upon safe arrival to the Mayo Clinic, Plaintiffs' daughter's primary treating

physician, Dr. Erin E. Knoebel, noted that Plaintiffs' daughter "comes from a part of North Dakota where access to imaging such as MRI is not available."

39.     While Plaintiffs' daughter was again discharged from the Mayo Clinic absent any surgical intervention, she continued to experience similarly troubling symptoms which forced her to report to the Mayo Clinic two more separate times, on May 27, 2015 and June 5, 2015.

40.     Upon Plaintiffs' daughter's discharge, Plaintiffs began receiving Explanation of Benefit statements (EOBs) from Defendant BCBSND that detailed the amounts BCBSND would approve for the medical transport flights and stating that Plaintiffs were responsible for any unpaid amounts.

41.     Defendant BCBSND's EOBs revealed that it was providing only a fraction of the transportation cost and leaving Plaintiff with a significant unpaid balance to cover.

42.     The EOB for Plaintiffs' daughter's March 2015 transport sent to Plaintiff Crusch revealed that Defendant BCBSND was reimbursing that transportation at an amount $5,572.62 *below* the 2015 BCBSND fee schedule amount, owing to coverage of only 7% of the mileage amount billed.

43.     Defendant BCBSND's explanation provided for the underpayment was that, despite both a medical necessity form and emergency treating physician medical records supporting necessity of Plaintiffs' daughter's transport to the Mayo Clinic, a facility closer than the Mayo Clinic was capable of "providing the necessary medical care."

44.     Defendant BCBSND provided no further explanation or other evidentiary basis for the determination of approved amounts.

45.     Defendant BCBSND claimed that Plaintiffs were responsible for the payment of

7

any unpaid amounts under a provision of the plan which limited reimbursements for non-participating providers such as Valley Med Flight, Inc.

46.     Defendant BCBSND provided no further explanation or evidentiary basis justifying the underpayment.

47.     Defendant BCBSND not only underpaid with respect to Ms. Crusch's Plan but also Mr. Schmitz's Plan – the EOB for Plaintiffs' daughter's March 2015 transport sent to Mr. Schmitz revealed that Defendant BCBSND was only reimbursing $5,527.62 *in total* for his daughter's transport with respect to his coverage.

48.     This reimbursement amount is unexplained and inconsistent with any other amount of reimbursement by BCBSND for either Plaintiffs' daughter's March or April 2015 transport.

49.     The EOBs for Plaintiffs' daughter's April 2015 transport which were sent to each plaintiff separately revealed that Defendant BCBSND, while reimbursing at a rate higher than that which was paid less than a month prior – for a transport of the exact same distance – was still providing only a fraction of the transportation cost and leaving Plaintiffs owing a significant unpaid balance.

50.     Again, Defendant BCBSND claimed that Plaintiffs were responsible for the unpaid amounts under a provision of its contract which limited reimbursements for non-participating providers.

51.     Defendant BCBSND reimbursed approximately 18 percent of the cost for Plaintiffs' daughter's March 2015 transport and approximately 36 percent of the cost for the April 2015 transport, leaving Plaintiffs with a total balance bill liability of $147,291.62, or nearly 73% of the total bill.

8

52.     This is a far cry from the "80% of Allowed Charge" coverage promised within Mr. Schmitz's Plan, and upon information and belief, Ms. Crusch's Plan as well.

53.     Upon information and belief, BCBSND has attempted to require its insureds to use air ambulance providers with which it has a contractual relationship, has failed to establish an adequate network, and has failed to evaluate, investigate, or analyze in any form the (a) quantity demand within its insured market for emergency air ambulance transportation, (b) average response time, or (c) overall safety standards of its contracted in-provider network, and patients, or their guardians, such as Plaintiffs, have been forced to seek emergency transportation through non-contracted providers and subject to exorbitant balance bill liability as a result.

54.     To advance its position, Defendant has underpaid claims by artificially lowering its reimbursement 'approved' rate for the emergency medical transport services for non-contracted providers, paying well below what would be considered a fair reimbursement and leaving the patients owing large sums of money for otherwise insured claims.

55.     Given the extremely low reimbursement approved by BCBSND for out-of-network providers, it appears that Defendant BCBSND's approved amounts are significantly below industry standards and deviate from the Usual, Customary, and Reasonable Rate ("UCR") reimbursement levels required for emergency medical transportation provided to its insureds.

56.     Defendant BCBSND's own internal healthcare coverage documents appear to indicate that the cost of an emergency medical transport, when medically appropriate and necessary, will be paid by the Defendant, irrespective of whether the air ambulance provider is in-network or out-of-network.

57.     Defendant BCBSND has used arbitrary and unreasonable reimbursement figures

9

which are not based on proper reimbursement rates, fair market values, or compliant with federal guidelines for emergency air transportation services.

58.     In the face of this, and other compelling evidence regarding the proper reimbursement, Defendant BCBSND has failed to provide the proper and mandated coverage levels and has denied all claims for additional reimbursement, leaving Plaintiffs personally liable for the deficiency.

59.     Furthermore, in relation to a portion of Plaintiffs' daughter's transports, Defendant BCBSND has refused to provide coverage at a level even consistent with its own arbitrary and unreasonable reimbursement rates – citing an explanation directly contrary to all available medical documentation and lacking any critical support, including but not limited to specific identification of a closer available treatment facility or supportive medical opinion.

60.     Defendant BCBSND's denials of coverage have been made pursuant to self-granted claims administration responsibilities.

61.     Defendant BCBSND is responsible for determining the reasonable reimbursement rates which must comport with the fair value of the service UCR reimbursement rates, and Defendant has abused its self-granted discretion in setting a reasonable reimbursement level.

62.     Plaintiffs and/or their representatives have internally appealed the Defendant BCBSND's reimbursement decision, and Defendant BCBSND upheld its own determinations and ignored additional information highlighting the impropriety of its claims administration process, and/or, in the alternative, exhaustion of the administrative claims process would be futile.

63.     According to its own coverage documents and protocols, Defendant BCBSND is not providing coverage in the correct and proper amounts.

64.     Plaintiffs have exhausted all internal administrative remedies, and Defendant BCBSND has denied all the Plaintiffs' appeals (or they are denied by operation of law).

65.     Plaintiffs supplied Defendant BCBSND with adequate and substantial proof that it is responsible for the correct and proper reimbursement of these claims.

66.     Plaintiffs are entitled to the immediate payment of all payments made and/or to compel Defendant BCBSND to provide coverage in accordance at the proper coverage levels.

67.     Upon information and belief, the monetary value of Plaintiffs' daughter's claims played a significant role in the wrongful actions of Defendant BCBSND.

68.     Upon information and belief, Defendant BCBSND is using its claims process to improperly select its own providers of air ambulance services and penalize the users of air transport providers selected by emergency room attending physician which is an inherent conflict-of-interest and abuse of discretion.

69.     Defendant is laboring under an inherent financial conflict of interest and has improperly shifted the financial responsibility for these claims to the insured when it had agreed to provide full coverage and ensure the medical care sought.

## DEFENDANT'S VIOLATIONS OF THE AFFORDABLE CARE ACT
## AND THE PUBLIC HEALTH SERVICE ACT

70.     Moreover, Defendant BCBSND has excluded relevant pricing data applicable to air ambulance or emergency medical air transportation services from any meaningful consideration of Plaintiff's administrative appeals.

71.     Occupying a dual-role as an insurer and administrator, Defendant BCI is duty-bound to follow applicable federal healthcare laws and regulations in plan administration.

72.     The Patient Protection and Affordable Care Act ("PPACA"), 42 U.S.C. § 18001 *et*

*seq.*, expanded the scope of the Public Health Service Act ("PHSA") to group health plans.

73.     Under 29 C.F.R. § 2590.715-2719A ("2719A"), a provision of the PHSA, if a group health plan offers "emergency room coverage," then the insurer "must cover emergency services," as that term is defined elsewhere in the regulation and under the Social Security Act, specifically in 42 U.S.C. § 1395dd.

74.     Under 42 U.S.C. § 1395dd, the term "emergency services" includes all emergency medical transportation decisions made by an attending emergency room physician at the hospital, and specifically provides for the transfer of an emergency room patient out of the hospital whose condition has not yet "stabilized."

75.     An attending emergency room physician may certify the transfer of a patient who is not yet "stabilized," and must also select the most appropriate method of transfer to another facility if it is deemed medically necessary.

76.     Through incorporating the definitions and protections of 42 U.S.C. § 1395dd concerning emergency services, Section 2719A necessarily encompasses emergency air medical transportation by moving an emergency patient between two facilities, *i.e.* transferring and receiving.

77.     The transportation also includes the dispensing of medically appropriate and necessary life support, while en route from facility to facility.

78.     To avoid exposing insureds to significant balance bill liability incurred because of an emergency beyond their control, federal regulations adopted under the PPACA set forth required payment methodologies for patients who receive emergency medical treatment from out-of-network emergency medical providers.

79.     The relevant PPACA regulations, codified under 45 C.F.R. § 147.138(b)(3), require that the payment rate for claims incurred using out-of-network medical providers, including air ambulance providers, must be calculated under a methodology known as the "greatest of three" payment guideline. Under this guideline, the rates paid for emergency medical services must be the highest of the following:

1.     The in-network provider negotiated rate;

2.     The amount arrived at by using the same method the plan generally uses to determine payments for out-of-network services, such as the usual, customary, and reasonable ("UCR") amount; or

3.     The amount that would be paid under Medicare. 45 C.F.R. § 147.138(b)(3)(i)(A)-(C).

80.     Defendant BCBSND has yet to provide any documentation as to how it arrived at its payment rate, yet it is more likely than not that under a "greatest of three" analysis, the greatest rate would be the Usual, Customary, and Reasonable rate paid to providers providing similar services under similar cost structures.

81.     Defendant BCBSND did not pay the Usual, Customary, and Reasonable rate for this transport.

## COUNT I
## ACTION UNDER ERISA SECTION 502(a)(1)(B),
## 29 U.S.C. § 1132(a)(1)(B) TO RECOVER FULL EMPLOYEE BENEFITS

82.     Plaintiffs re-allege all preceding paragraphs.

83.     ERISA imposes a "higher-than-marketplace" quality on healthcare insurers and claim administrators, like Defendant BCBSND.

13

84.     Plaintiffs were continuously covered under a health insurance policy purporting to provide healthcare coverage for certain covered medical expenses under their plans for the relevant time period.

85.     Plaintiffs' health insurance premiums were paid, and they were entitled to benefits thereunder for themselves and their dependent beneficiaries, upon supplying proof of a claim incurred under the plans.

86.     Plaintiffs provided a series of medically necessary claims for their dependent beneficiary for reimbursement and/or coverage for necessary medical treatment which Defendant has denied in whole or in part.

87.     Defendant BCBSND has failed to properly interpret its own contract such that Plaintiffs' daughter's claims have been underpaid and Plaintiffs and their families have been left owing nearly $147,291.62 for air medical transports, despite their medical necessity.

88.     Defendant BCBSND's actions constitute a breach of the terms of Plaintiffs' plans and are also in violation of applicable law and/or regulations.

89.     Plaintiffs have made attempts to redress these violations of their rights by, among other things:

a.      Filing administrative appeals;

b.      Submitting written proof of loss for the proper payment of medical benefits;

c.      Following all internal procedures for the resolution of medical claim coverage; and/or

d.      Declaring a lack of satisfaction in the dispute resolution or grievance process created by Defendant.

90.     Defendant BCBSND, as claims administrator and insurer, has breached the plans' terms and its own fiduciary duties by artificially lowering the reimbursement rate of Plaintiffs' and/or their beneficiaries' medical coverage and leaving Plaintiffs liable for medical charges that would otherwise be covered.

91.     For its own impermissible financial profit and other motivations, Defendant BCBSND has improperly shifted the risk of insurance coverage to infirm insureds and/or their beneficiaries who are in need of emergency medical treatment.

92.     Additionally, Plaintiffs have the right to full and fair review and proper notice of the reasons for the denial of their claimed benefits under ERISA Section 503, 29 U.S.C. § 1133.

93.     Plaintiffs were denied their right to a full and fair review of their daughter's claims for benefits in one or more of the following ways:

    a.      Defendant BCBSND, as claims administrator, is operating with the inherent structural conflict of interest by acting as both administrator and insurers of Plan members' benefits and this has affected the unbiased decision making of the Defendant BCBSND;

    b.      Defendant BCBSND's internal file reviewers refuse to consider or credit any favorable documentation demonstrating the correct and proper reimbursement rates; and

    c.      Defendant BCBSND repeatedly failed to abide by Department of Labor Regulations ("DOL") governing the administering of group healthcare claims by, among other things, explaining the evidentiary basis for its decision and producing the guidelines, protocols, and rules governing its decision (in existence at the time it decided these claims in 2015).

94.     Because ERISA requires Defendant BCBSND to discharge its fiduciary duties with respect to a plan solely in the interest of the participants and beneficiaries and with utmost, undivided loyalty to their interests, equitable relief is necessary, requiring, without limitation, the

15

re-administration of denied claims and the enjoining of the further use of artificially lower reimbursement rates for participants requiring emergency air medical transportation services.

95.     ERISA requires that Plaintiffs be afforded a reasonable opportunity for a full and fair review of the decision denying their and/or their beneficiaries' benefits.

96.     Defendant BCBSND's actions as set forth above are in violation of the ERISA statute and the relevant plans.

97.     Further, by failing to provide evidence or an explanation for its determination of reimbursement rates, Defendant BCBSND is denying Plaintiffs an opportunity for a full and fair review.

98.     Defendant BCBSND has further violated ERISA's full and fair review requirement through refusing to provide any evidence supporting, or explanation of, the portion of its decision related to a denial of full reimbursement under even its own arbitrary and unreasonable fee schedule, based upon the alleged "nearest facility equipped to provide the necessary medical care" provision.

99.     As a result of the breaches of their duties as described above, Plaintiffs have been harmed, continue to be harmed, and will be harmed in the future, owing to the acts or omissions detailed above.

100.    As a result of the foregoing, Plaintiffs are entitled to the following:

a.      Full payment/reimbursement for all emergency medical transport benefits under the subject health insurance contract and/or an order to pay the provider the balances due and owing to absolve Plaintiffs of personal liability for the charges;

b.      Affirmative injunctive relief enforcing Plaintiffs and/or their beneficiaries' rights under the contract by compelling Defendant to pay and/or reimburse Plaintiffs for the correct level of coverage and/or an order to pay the

16

provider the balance due and owing to absolve Plaintiffs of personal liability for the charges; and

c.      Any and all other appropriate relief as result of the breach.

WHEREFORE, Plaintiffs request judgment and/or injunctive relief against Defendants adjudging that Plaintiffs are entitled to full reimbursement for emergency medical transport benefits, all other damages, interest, attorney fees, and all other appropriate relief to which this Court deems just.

**COUNT II**
**ACTION AGAINST DEFENDANT BCBSND UNDER**
**ERISA SECTIONS 502(a)(2) & (3), 29 U.S.C. §§ 1132(a)(2) & (3)**
**FOR BREACH OF FIDUCIARY DUTY**

101.    Plaintiffs re-allege all preceding paragraphs.

102.    Plaintiffs are entitled to a fair and proper administration of their benefit plans by Defendant BCBSND, a fiduciary under the plans and ERISA.

103.    Defendant BCBSND is operating under a financial conflict of interest with respect to Plaintiffs which has impermissibly affected the handling of the underlying claim and Plaintiffs' rights under 29 U.S.C. § 1133.

104.    Defendant BCBSND has breached its fiduciary duties to Plaintiffs by knowingly underpaying their claims for emergency air ambulance transportation and having in place a claims structure that permitted contradictory and/or inconsistent payment methodologies.

105.    Additionally, in underpaying the claims, Defendant BCBSND failed to take into account the patient balance billing protections set forth in the PPACA and PHSA.

106.    Plaintiffs suffered harm as a result.

107.    Defendant BCBSND should be held liable for restitution, unjust enrichment, and surcharge as a result of breaching its duties to Plaintiffs, through the actions alleged above.

WHEREFORE, Plaintiffs request full legal and equitable relief, appointment of an independent fiduciary, and surcharge against Defendant BCBSND plus costs, interest, and attorney fees, equitable disgorgement, declaratory relief, and any other relief to which Plaintiffs are entitled.

## COUNT III
## BREACH OF CONTRACT AND
## ACTION TO RECOVER FULL HEALTH CARE BENEFITS

108.     Plaintiffs re-allege all preceding paragraphs.

109.     Plaintiffs are insured under a contract of health insurance which, among other things, purports to provide full medical coverage.

110.     Plaintiffs' health insurance premiums were fully paid, and they were and are entitled full benefits thereunder.

111.     Plaintiffs provided a series of medically necessary claims for reimbursement and/or coverage for their daughter's necessary medical treatment which Defendant has denied in whole or in part.

112.     Defendant BCBSND has failed to properly interpret its own contracts such that Plaintiffs have been found ineligible for the accurate reimbursement and/or coverage for certain medical benefits, despite meeting the contract's eligibility requirements.

113.     Defendant BCBSND's actions constitute a breach of contract and are not authorized under the contract itself or applicable law and/or regulations.

114.     Plaintiffs made attempts to redress this violation of their rights, by among other things:

> a.     Filing administrative appeals;
> b.     Submitting written proof of loss for the proper payment of medical benefits;
>
> c.     Following all internal procedures for the resolution of medical claim coverage;

        d.      Declaring a lack of satisfaction in the dispute resolution or grievance process created by Defendant.

115.    Defendant BCBSND has breached its contract by artificially lowering the reimbursement rate of Plaintiffs' medical coverage, leaving Plaintiffs liable for medical charges that would otherwise be covered by the proper reimbursement rates.

116.    Defendant BCBSND's actions also violate the duty of good faith implied in every North Dakota insurance contract.

117.    For its own impermissible financial profit motivations, Defendant BCBSND has improperly shifted the risk of insurance coverage to the parents of a beneficiary who was in need of emergency medical treatment.

118.    As a result of the foregoing, Plaintiffs are entitled to the following:

a.    Full payment/reimbursement for all emergency medical transport benefits under the subject health insurance contract and/or an order to pay the provider the balance due and owing to absolve Plaintiffs of personal liability for the charges;

b.    Affirmative injunctive relief enforcing Plaintiffs' rights under the contract by compelling Defendant to pay and/or reimburse Plaintiffs for the correct level of coverage and/or an order to pay the provider the balance due and owing to absolve Plaintiffs of personal liability for the charges.

WHEREFORE, Plaintiffs request judgment and/or injunctive relief against Defendant adjudging that Plaintiffs are entitled to full coverage for emergency medical transport benefits, all other damages, interest, attorney fees, and all other appropriate relief to which this Court deems just.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully requests:

1.     An order compelling Defendant BCBSND to pay Plaintiffs forthwith the full amount of their daughter and dependent beneficiary's unpaid medical benefits minus any payments made as set forth in the plan, including interest on all unpaid benefits;

2.     An order compelling full disclosure of Defendant's protocols regarding Plaintiffs' daughter's benefits, and all costs and fees associated with pursuing that accounting;

3.      An award of reasonable attorneys' fees and costs for having to bring this claim; and

4.     Any and all such other legal or equitable relief as may be just and appropriate.

Respectfully submitted,

**JOHN J. CONWAY, P.C.**
Attorneys for Plaintiffs

By:     _____
John J. Conway (MI #56659)
26622 Woodward Ave., Ste. 225
Royal Oak, MI 48226
jj@jjconwaylaw.com
(313) 961-6525

Dated: September 26, 2019